UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Jane P. Carey, as Power of Attorney
for Joseph Michael Passante, Principal,

                Plaintiff,

vs.

Mayo Clinic Hospital – Rochester,
d/b/a Mayo Clinic - Saint Mary's
Hospital; and Mayo Clinic, d/b/a
Mayo Clinic Rochester,

                Defendants.

Case No.:

**JURY TRIAL DEMANDED**

**COMPLAINT**

---

For her Complaint against defendants, plaintiff Jane P. Carey, as Power of Attorney for Joseph Michael Passante, Principal, alleges and states as follows:

**PARTIES**

1.     Plaintiff Jane P. Carey, as Power of Attorney for Joseph Michael Passante, Principal (Plaintiff) is a citizen of New Jersey.  On June 28, 2010, by Order of the District Court of Bergen County New Jersey, Plaintiff was appointed Power of Attorney for her brother, Joseph Michael Passante, Principal (Passante).

2.     Defendant Mayo Clinic Hospital – Rochester, d/b/a Mayo Clinic – Saint Mary's Hospital (Mayo Clinic-Saint Mary's Hospital) is a Minnesota corporation with its principal place of business located at 200 First Street S.W., Rochester, Minnesota 55905. At all times herein, the Mayo Clinic-Saint Mary's Hospital employed physicians, psychiatrists, psychologists, nurses and other health and/or mental heath care providers

who provided related patient services through such facility and/or the Mayo Clinic Psychiatry and Psychology Treatment Center to patients including Passante.

3.      Defendant Mayo Clinic, d/b/a Mayo Clinic Rochester (Mayo Clinic Rochester) is a Minnesota corporation with its principal place of business located at 200 First Street S.W., Rochester, Minnesota 55905.  At all times herein, the Mayo Clinic Rochester employed physicians, psychiatrists, psychologists, nurses and other health and/or mental heath care providers who provided related patient services through such facility, the Mayo Clinic-Saint Mary's Hospital and/or the Mayo Clinic Psychiatry and Psychology Treatment Center to patients including Passante.  Unless referred to individually, defendants Mayo Clinic-Saint Mary's Hospital and Mayo Clinic Rochester are collectively referred to as "Mayo Clinic."

## JURISDICTION AND VENUE

4.      The Court maintains jurisdiction pursuant to 28 U.S.C. § 1332 as the damages alleged in this controversy exceed Seventy-Five Thousand and no/100ths dollars ($75,000.00) exclusive of interest, costs and disbursements and that such controversy is between citizens of different states.  Venue is proper in the District of Minnesota.

## FACTS

### First Suicide Attempt.

5.      On October 5, 2009, Passante attempted suicide by self-induced carbon monoxide poisoning following which he was transferred to the Mayo Clinic for treatment and later released (*First Suicide Attempt*).

**Second Suicide Attempt.**

6.      On November 2, 2009, Passante attempted suicide by jumping off a highway overpass in front of a passing semi-tractor trailer following which he was transferred to the Mayo Clinic for treatment of multiple fractures and recurrent suicidal ideation for which he was admitted to the Mayo Clinic's "Psychiatry and Psychology Treatment Center" and placed on a "fifteen-minute suicide watch" (*Second Suicide Attempt*).

**Provided With BOTH the "Means" AND "Opportunity,"
Passante Attempts Suicide A Third Time.**

7.      Provided the "means" by which to do so, a fifteen-minute timeframe provides one with an ample "opportunity" to commit suicide by asphyxiation by hanging and/or other means.

8.      Prior to Passante's admission to such facility and placement on a fifteen-minute suicide watch and notwithstanding their knowledge of Passante's *First Suicide Attempt*, his *Second Suicide Attempt* and, importantly, that the "fifteen-minute" duration thereof would provide Passante with ample time to commit suicide by hanging and/or other means; the Mayo Clinic's Psychiatry and Psychology Treatment Center's staff failed to properly "suicide-proof" Passante's room by prescribing appropriate precautionary measures including, without limitation, ensuring that Passante's room it did not contain and/or permit access to any items from which Passante could fashion a noose to hang himself.

9.      The room in which the Mayo Clinic's Psychiatry and Psychology Treatment

3

Center's staff placed Passante contained both a television cord from which to fashion a noose and a fixture from which to hang such noose.

10. By their placing Passante on a fifteen-minute suicide watch in a room containing a television cord from which to readily fashion a noose and a fixture from which to hang it; the physicians, psychiatrists, psychologists, nurses and other health and/or mental heath care providers comprising the Mayo Clinic's Psychiatry and Psychology Treatment Center's staff negligently departed from the degrees of skill and care ordinarily possessed and exercised by providers under the same or similar circumstances in that they failed to properly suicide-proof Passante's room by, without limitation, ensuring that it did not contain and/or permit access to any items from which Passante could fashion a noose to hang himself.

11. By their placing Passante on a fifteen-minute suicide watch in a room containing a television cord from which to readily fashion a noose and a fixture from which to hang it; the Mayo Clinic's Psychiatry and Psychology Treatment Center's staff provided Passante with both the "means" (television cord and fixture) and "opportunity" (fifteen-minute suicide watch) to commit suicide.

12. On November 29, 2009, his having been provided with both the "means" and "opportunity" to do so, Passante attempted suicide a third time by fashioning a noose from an available television cord and hanging himself (*Third Suicide Attempt*).

13. As a result of his *Third Suicide Attempt*, Passante sustained severe and permanent injuries.

## COUNT ONE

## NEGLIGENCE

14.     Plaintiff restates and realleges the allegations contained in paragraphs 1-13 as though fully set forth herein.

15.     On November 29, 2009, the physicians, psychiatrists, psychologists, nurses and other health and/or mental heath care providers comprising the Mayo Clinic's Psychiatry and Psychology Treatment Center's staff provided related patient services to Passante.

16.     In its employment of such physicians, psychiatrists, psychologists, nurses and other health and/or mental heath care providers, the Mayo Clinic had a duty to exercise reasonable care in its hiring, training, retention and supervision of such providers and their providing of related patient services to Passante.

17.     Prior to Passante's admission to such facility and placement on a fifteen-minute suicide watch and notwithstanding their knowledge of Passante's *First Suicide Attempt*, his *Second Suicide Attempt* and, importantly, that the "fifteen-minute" duration thereof would provide Passante with ample time to commit suicide by hanging and/or other means; the Mayo Clinic's Psychiatry and Psychology Treatment Center's staff failed to properly "suicide-proof" Passante's room by prescribing appropriate precautionary measures including, without limitation, ensuring that Passante's room it did not contain and/or permit access to any items from which Passante could fashion a noose to hang himself.

18.     The room in which the Mayo Clinic's Psychiatry and Psychology Treatment Center's staff placed Passante contained both a television cord from which to fashion a noose and a fixture from which to hang such noose.

19.     By their placing Passante on a fifteen-minute suicide watch in a room containing a television cord from which to readily fashion a noose and a fixture from which to hang it; the physicians, psychiatrists, psychologists, nurses and other health

and/or mental heath care providers comprising the Mayo Clinic's Psychiatry and Psychology Treatment Center's staff negligently departed from the degrees of skill and care ordinarily possessed and exercised by providers under the same or similar circumstances in that they failed to properly suicide-proof Passante's room by, without limitation, ensuring that it did not contain and/or permit access to any items from which Passante could fashion a noose to hang himself.

20.    By their placing Passante on a fifteen-minute suicide watch in a room containing a television cord from which to readily fashion a noose and a fixture from which to hang it; the Mayo Clinic's Psychiatry and Psychology Treatment Center's staff provided Passante with both the "means" (television cord and fixture) and "opportunity" (fifteen-minute suicide watch) to commit suicide.

21.    On November 29, 2009, as a direct and proximate cause of the Mayo Clinic's Psychiatry and Psychology Treatment Center's staff's careless and negligent conduct, Passante made his *Third Suicide Attempt*.

22.    As a direct result of the Mayo Clinic's negligence, Passante sustained severe and permanent injuries, which have and will in the future cause pain, discomfort and disability; his earning capacity has been and will be impaired; he has been and will be caused to expend sums of money for general medical care and treatment.

23.    As a direct result of the Mayo Clinic's negligence, Passante has been damaged in an amount exceeding Seventy-Five Thousand and No/100ths Dollars ($75,000.00).

### JURY DEMAND

Plaintiff respectfully demands trial by jury of all claims and issues so triable.

### PRAYER FOR JUDGMENT

WHEREFORE, plaintiff Jane P. Carey, as Power of Attorney for Joseph Michael Passante, Principal, prays for judgment against the defendants for a reasonable amount in excess of Seventy-Five Thousand and No/100ths Dollars ($75,000.00), together with

costs and disbursements and interest as allowed by law; and such other and further relief as this court may deem just and equitable.

GARDNER LAW OFFICE

Dated: November 22, 2013

Robert M. Gardner, #234977
3000 County Road 42 West, Suite 310
Burnsville, MN 55337-4827
Telephone: (952) 435-7474
rgardner@mnlawcenter.com

Attorney for Plaintiff Jane P. Carey, as
Power of Attorney for Joseph Michael
Passante, Principal